IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

ROBERT T. PORTER and      )
DANIEL J. PORTER,         )
                          )
     Plaintiffs,          )
                          )        CIVIL ACTION NO.
     v.                   )        1:10cv1107-MHT
                          )            (WO)
THE CITY OF ENTERPRISE,   )
et al.,                   )
                          )
     Defendants.          )

OPINION AND ORDER

Plaintiffs Robert T. Porter and Daniel J. Porter assert seizure and assault claims under the Fourth Amendment (based on the Fourteenth Amendment and enforced through 42 U.S.C. § 1983) as well as state-law tort claims against the following defendants: the City of Enterprise, Alabama and police officers Javier Ruiz, Jason Anderson, Gerard Dube, Eric Stinson, and James Sanders.  The jurisdiction of the court is invoked pursuant to 28 U.S.C. §§ 1331, 1367.  The case is currently before the court on the defendants' joint

motion to dismiss.  For the reasons that follow, that motion will be granted in part and denied in part.


## I.  MOTION-TO-DISMISS STANDARD

In considering a motion to dismiss a complaint, the court accepts the plaintiff's factual allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in his favor, Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).  To survive, the complaint need contain only "enough facts to state a claim to relief that is plausible on its face"; it need not make "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).


## II.  BACKGROUND

According to the complaint, the Porters rented a motel room in Enterprise, Alabama, on December 31, 2008. That evening, New Year's Eve revelers attempted to enter the Porters' room.  Efforts to rebuff the uninvited

2

guests led to a confrontation between the Porters and "approximately twenty belligerent persons" who were behaving "in a hostile and intimidating manner." Amended Compl. (Doc. No. 27) ¶ 9. Daniel Porter dispersed the crowd with several shots from his handgun.

The police were called to the scene. As they approached, Daniel Porter raised his hands over his head and then slowly went onto his knees, before finally lying down on the ground in a prone position. The handgun was on the ground next to him and an officer kicked it away. Although Porter remained compliant and surrendered himself completely, he was grabbed and his head was slammed into the concrete ground, leaving him bleeding and in pain.

Meanwhile, the police officers approached Robert Porter. He, too, fully complied with their directives and followed their commands to lie on the ground. However, an instant after one of the officers instructed him to put his hands behind his back, and, before he had

3

a chance to react, the officer repeatedly discharged his

taser into Porter's shoulder.  As a result of the tasing,

Porter suffered at least 16 taser marks, abrasions, loss

of muscle control, and agonizing pain.  Both Daniel and

Robert Porter were subsequently arrested.[1]

------------------------

    1.  The complaint states that Daniel Porter's "head
was slammed into the parking lot."  Amended Compl. (Doc.
No. 27) ¶ 15.    The defendants make much of the
complaint's use of the passive voice and insist that,
since the complaint fails to identify who actually
slammed Daniel Porter's head into the ground, it is
somehow defective.  However, it can be inferred from the
the complaint, as read in favor of the Porters, that the
police officers were acting together.  For example, at
one point in the amended complaint, the Porters allege
that, "After Daniel J. Porter had surrendered himself and
was compliant with the instructions of the police
officers they committed acts of physical violence upon
him causing him injuries as a result of their use of
excessive and unreasonable force", id. at ¶ 18, and at
another point they allege that "None of the police
officers intervened all acquiescing in the tasing of an
arrestee who was lying down and had not been combative
with the police officers." Id. at ¶ 25.   But most
importantly, the overall thrust of the complaint is that
the officers were acting together.  To be sure, after
discovery and on summary judgment, it may appear that
all the officers were not acting together and that some
are not arguably liable and should be dismissed; however,
the issue for the court at this time is the complaint.

Following that incident, the Porters brought suit against the police officers who responded to the scene and their employer, the City of Enterprise.  They allege seven separate claims for relief.[2]  Claim one is that the police officers used excessive force in violation of the Fourth Amendment during their arrest of Daniel Porter.  Claim two is that the police officers used excessive force in violation of the Fourth Amendment during their arrest of Robert Porter.  Claim three is that the City of Enterprise had a policy or practice of permitting its officers to use excessive force and is therefore liable for the excessive forced used against the Porters.  Claim

_____

2.  The Porters, in their reply to the defendants' motion to dismiss, argue that they asserted eight claims, rather than seven.  It appears that they have relied on their initial complaint, rather than on their amended complaint, in reaching that conclusion.  Since, "'an amended complaint supersedes the initial complaint and becomes the operative pleading in the case,'" Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011) (quoting Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007)), the court has addressed plaintiffs' claims as they appear in the amended complaint.

<u>four</u> is that Daniel Porter was arrested without probable cause in violation of the Fourth Amendment.  <u>Claim five</u> is that the police officers committed the state-law tort of assault and battery when arresting Daniel Porter. <u>Claim six</u> is that the police officers committed the state-law tort of assault and battery when arresting Robert Porter.  <u>Claim seven</u> is that the City of Enterprise pursued a malicious prosecution against Daniel Porter.[3]

## III.  DISCUSSION

### A.  Alleged Constitutional Violations

### 1.  Excessive Force (Claims One, Two, and Three)

#### a.  Claims One and Two

The Porters argue that the police officers violated their Fourth Amendment rights by using excessive force during their arrest.  Specifically, in claim one, Daniel

---

3.  It is unclear whether this claim seeks relief under federal or state tort law.  Both possibilities are addressed below.

6

Porter alleges that he was injured when the police officers slammed his head into the ground; and, in claim two, Robert Porter alleges that the officers unnecessarily and repeatedly tased him. The Fourth Amendment's prohibition on unreasonable seizures protects individuals from being subjected to excessive force during police encounters. <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1287 (11th Cir. 2011). An officer's use of force violates that constitutional protection if it is "objectively [un]reasonable in light of the facts and circumstances." <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989) (internal quotation marks omitted).

The Eleventh Circuit Court of Appeals has explained "that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions" is unreasonable and, when accompanied by injury to the suspect, may "violate[] that suspect's rights under the Fourth Amendment." <u>Fils</u>, 647 F.3d at 1289. Based on that premise, it has found constitutional violations

when, for example, a police officer punched a handcuffed and compliant suspect, <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1330 (11th Cir. 2008), when an officer used a taser against a non-violent individual, <u>Fils</u>, 647 F.3d at 1290, and when an officer struck a passive suspect with a gun, <u>Walker v. City of Riviera Beach</u>, 212 F. App'x 835, 838 (11th Cir. 2006).

Daniel Porter claims that unconstitutional force was used during his arrest. According to the complaint, Porter was motionless in the prone position and fully compliant with the officers' instructions when they approached and slammed his head into the parking lot floor. Put another way, the alleged constitutional violation is that the police officers struck a passive and compliant suspect, causing injuries to his head.

That alleged violation is materially similar to the violations identified in both <u>Hadley</u> and <u>Walker</u>. For example, the defendant officer in <u>Hadley</u> "punched [the plaintiff] in the stomach while he was handcuffed and not

struggling or resisting."   526 F.3d at 1330. The court held that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."   Id.   While Hadley was handcuffed at the time, that fact is not essential.   In Walker, while the plaintiff was unrestrained, 212 F. App'x at 838, the court still found the officer's conduct--striking the suspect in the head with a pistol--"obviously unconstitutional" and "at the core of what the Fourth Amendment prohibits."   Id. at 839.   That the officer in Walker hit the suspect's head with something hard (a gun) and the officers in this case allegedly hit something hard (the pavement) with the suspect's head makes no difference.   Like the plaintiffs in Hadley and Walker, Daniel Porter alleges that he was subjected to gratuitous force while he was neither resisting nor struggling with the officers.

Because Porter, like Hadley and Walker, was not resisting arrest and because he, like Hadley and Walker,

9

posed no danger to the arresting officers, they were "not entitled to use any force at that time." Hadley, 526 F.3d at 1330. Therefore, like the punch in Hadley and the single strike with a gun in Walker, smashing Daniel Porter's head into the pavement--despite his compliance with the officer's instructions--constitutes excessive force in violation of the Fourth Amendment. The defendants' motion, in so far as it seeks dismissal of claim one, must therefore be denied.

The Eleventh Circuit's opinion in Fils all but requires the same result for claim two, in which Robert Porter alleges that the police officers' repeated use of the taser constitutes excessive force. In Fils, the defendant officer confronted a partygoer whom he had overheard using vulgar language. The officer "pulled out his taser" and, when the plaintiff "put up his hands and took one step backward," the officer responded by shooting his taser into the plaintiff's chest. 647 F.3d at 1288. Even though the plaintiff did not resist, the

10

officer continued to discharge his taser into the plaintiff's chest and neck. <u>Id</u>. The court found the use of force excessive, given that (1) the plaintiff had not committed a "serious offense," (2) the plaintiff was not a threat to the officer's safety, and (3) the plaintiff "was not resisting arrest or attempting to escape."[4] <u>Id</u>. at 1288-89.

Those three factors are also present in this case. First, Robert Porter never possessed a weapon and nothing in the complaint indicates that he was arrested for a serious offense. Second, like the plaintiff in <u>Fils</u>, the complaint depicts Porter as little more than a bystander who had done nothing that would appear threatening to the police. Third, Porter had not attempted to escape. Instead, he laid down on the ground and complied with the arresting officers' various requests. Under those

---

4. Even though the plaintiff was charged with resisting arrest, the court accepted as true, for summary judgment purposes, the plaintiff's version of the events.

11

circumstances, the constitution protected him from being

repeatedly tased.[5]


### b.  Claim Three

Section 1983 provides a remedy against "any person"

who, under color of state law, deprives another of his

constitutionally protected rights.  42 U.S.C. § 1983.  In

Monell v. Department of Social Services, 436 U.S. 658,

690 (1978), the Supreme Court held that municipalities

and other local government entities are included among

those persons to whom § 1983 applies.  Nevertheless, for

a municipality to be liable for the actions of one of its

officers, that officer must have acted "pursuant to

official municipal policy of some nature" and that policy

------------

    5.  For the above reasons, the police officers are
not entitled to qualified immunity on the claims one and
two.   "[T]the state of the law ... gave [them] fair
warning that their alleged treatment of [the Porters] was
unconstitutional."   Hope v. Pelzer, 536 U.S. 730, 740
(2002).

12

must have "caused [the] constitutional tort." <u>Id</u>. at 691.

The Eleventh Circuit has distilled <u>Monell</u>'s holding into three parts: "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004). Since this court has already concluded that the complaint sufficiently alleges that the Porters' Fourth Amendment rights were violated, only the second and third elements are at issue here.

The complaint alleges that the city had a policy of ignoring and otherwise condoning the excessive use of force by its officers. The primary point of contention between the parties is whether, in addition to identifying that policy, the complaint sufficiently

13

alleges that it constituted deliberate indifference to the constitutional violations.  Specifically, the city argues that the complaint fails to allege facts that would indicate that it was on notice of the need to intervene--either through better training, more thorough supervision, or effective punishment of wrongdoers--in order to eliminate the use of excessive force.  See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th cir. 1998) ("To establish ... 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.").  The court disagrees.

In explaining the city's alleged policy, the complaint uses the word "consistently," which the Oxford English Dictionary defines as "uniformly, with persistent uniformity," to explain the frequency with which the city "ignored the use of excessive force during the course of arrest."  Amended Compl. (Doc. No. 27) ¶ 20.  The clear

14

implication from that language is that the city was made aware, on multiple occasions, that its officers had used excessive force and that its response on each of those occasions was to do nothing but permit that behavior to continue.

A municipality's "continued adherence to an approach that [it] knew or should [have known] failed to prevent tortious conduct by employees may establish the conscious disregard for the consequence of their action--the 'deliberate indifference'--necessary to trigger municipal liability." <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 407 (1997). That is precisely what is alleged here: the city knew that violations were occurring and it consistently ignored them, even though doing so let the violations continue. The alleged policy therefore constitutes deliberate indifference to the constitutional violations.

The complaint also satisfies the causation element required for municipal liability. The Porters allege

that one of the arresting officers, Jason Anderson, held the position of watch commander and was therefore in a supervisory role over the other officers. But for the city's policy of ignoring police abuses, the Porters submit, the other arresting officers would not have committed the constitutional violations in Anderson's presence (as they would have feared reprisal). That is certainly a plausible theory of causation and therefore the complaint sufficiently alleges that element of municipal liability.

Whether or not such a policy actually existed and whether or not it caused the specific constitutional violations in this case remains to be seen, but the Porters have, at least, sufficiently alleged a claim against the City of Enterprise for violation of their Fourth Amendment right to be free from unreasonable and excessive force during an arrest. The defendants' motion, insofar as it seeks dismissal of claim three, must therefore be denied.

16

## 2.  False Arrest (Claim Four)

Claim four asserts that Daniel Porter's arrest violated the Fourth Amendment.  That claim will be dismissed on the qualified-immunity ground.

An arrest does not violate the Fourth Amendment if it is supported by probable cause.  See Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Id. (internal quotation marks omitted).  But courts "do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." Id. at 1137.  Instead, the doctrine of qualified immunity protects the arresting officers unless they lacked reasonable probable cause: there is no liability if "reasonable officers in the same circumstances and

possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (alteration in original) (internal quotation marks omitted).

"Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime." Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004). While the complaint fails to identify the offense for which Daniel Porter was arrested,[6] the Eleventh Circuit has held that, "[i]f the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply." Brown

---

6. That alone might justify dismissal of this claim, since the arresting officers' actions were within their discretionary functions and Porter therefore bears the burden of showing that qualified immunity does not apply. See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993). It is difficult to see how that burden could be carried without first identifying the crime for which the plaintiff was arrested.

v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010)
(citing Skop, 485 F.3d at 1138).  Therefore, rather than
dismissing the claim out of hand, the court will consider
whether (based solely on the allegations contained in the
complaint) the arresting officers had arguable probable
cause to arrest Porter for disorderly conduct.

Disorderly conduct under Alabama law includes the
reckless creation of a risk of public alarm through
"threatening behavior." 1975 Ala. Code § 13A-11-7.  The
complaint details precisely that type of conduct.  In
order to scare off a crowd of New Year's Eve revelers,
Daniel Porter fired multiple shots from his handgun into
the air.  The threat apparently worked (the crowd
dispersed), but Porter's behavior led someone (presumably
one of the frightened partygoers) to call the police.
When the police arrived, they found Porter at the hotel
in question with a handgun either in his possession or
immediately adjacent to him, such that the officer had to

"kick[] the firearm away" before safely approaching and arresting him.  Amended Compl. (Doc. No. 27) ¶ 14.

Firing a weapon into the air obviously creates a risk of alarm.  Indeed, that was Porter's intent when he did so.  The police were made aware of his behavior and responded to the scene to find Porter armed.  Under these circumstances they certainly had arguable probable cause to believe that he had fired the gun, thereby creating public alarm through threatening behavior, and were therefore well within their rights to make the arrest. Given the existence of arguable probable cause, qualified immunity protects the police officers from any lawsuit predicated on false arrest. Claim four must therefore be dismissed.

### B.  Alleged State-Law Violations
### (Claims Five and Six)

In claims five and six, Daniel and Robert Porter assert that the arresting officers committed the state-law tort of assault and battery during the arrest.   The

20

police officers do not quibble with whether the complaint sufficiently alleges the elements of assault and battery.[7] Instead, they assert that Alabama's discretionary-function immunity, 1975 Ala. Code. § 6-5-338, shields them from suit.  At this stage in the litigation it would be premature to dismiss the Porters' assault and battery claims on that ground.

The test for statutory, discretionary-function immunity under § 6-5-338 is set out in the Alabama Supreme Court's decision of Ex parte Cranman, 792 So.2d 392 (Ala. 2000).  See Brown, 608 F.3d at 741 (citing Ex parte City of Tuskegee, 932 So.2d 895, 904 (Ala. 2005) ("The restatement of State-agent immunity as set out in Cranman, 792 So.2d at 405, now governs the determination of whether a peace officer is entitled to immunity under

---

7.   "The plaintiff in an action alleging assault and battery must prove '(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.'"  Harper v. Winston County, 892 So.2d 346, 353 (Ala. 2004) (quoting Ex parte Atmore Cmty. Hosp., 719 So.2d 1190, 1193 (Ala. 1998)).

§ 6-5-338(a).")).  At this stage in the litigation, the burden rests on the plaintiff to allege sufficient facts from which a reasonable jury could conclude that a defendant "acted willfully, maliciously, fraudulently, in bad faith, or beyond [their] authority" in committing the tort.  <u>Cranman</u>, 792 So.2d at 405; <u>Brown</u>, 608 F.3d at 741 (citing <u>Ex parte Estate of Reynolds</u>, 946 So.2d 450, 452 (Ala. 2006)).  Only then can the claim survive a defendant's motion to dismiss.

For much the same reason as detailed in this court's discussion of the Porters' excessive-force claims, the allegations in the complaint could, if proven true, justify liability for assault and battery, for the events described in the complaint would permit a jury to conclude that the alleged excessive force was applied intentionally, gratuitously, and in bad faith.  <u>Brown</u>, 608 F.3d at 742.

It is unclear whether the Porters had hoped to also hold the City of Enterprise liable for these alleged

22

torts, but the complaint does not provide any theory of municipal liability and therefore the claim must be dismissed insofar as it seeks relief from the city.

###     C.   Malicious Prosecution (Claim Seven)

In claim seven, Daniel Porter alleges that the City of Enterprise pursued a malicious prosecution against him.  While it is unclear whether he intended to allege this claim under state or federal law, his failure to adequately plead a claim for relief under either authority requires the court to dismiss this claim.

###         1.   Federal Law

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures."  Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004).  Even if it is assumed, without deciding, that the complaint sufficiently alleges

23

a factual basis for the common law tort of malicious prosecution,[8] it utterly fails to allege the requisite unreasonable seizure.

Porter bears the burden of proving that he was "seized in relation to the prosecution, in violation of [his] constitutional rights." Kingsland, 382 F.3d at 1235. In the case of a warrantless arrest, the Eleventh Circuit has held that "the judicial proceeding does not begin until the party is arraigned or indicted" and has rejected the idea that a suspect is continually seized, for the purposes of a wrongful prosecution claim, from the moment of arrest through trial. Id. at 1235-36. Therefore, the arrest in this case "cannot serve as the

_____

8.   A claim for malicious prosecution under Alabama law has four elements: "(1) that the present defendant instituted a prior judicial proceeding against the present plaintiff; (2) that in instituting the prior proceeding the present defendant acted without probable cause and with malice; (3) that the prior proceeding ended in favor of the present plaintiff; and (4) that the present plaintiff was damaged as a result of the prior proceeding." Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 174 (Ala. 2000).

predicate deprivation of liberty because it occurred
prior to the time of arraignment." Id. Since the
complaint fails to identify any other seizure, it has not
alleged a Fourth Amendment violation sufficient to
withstand the defendants' motion to dismiss.

### 2. State Law

Treating the claim as arising under state law
requires the same result. The complaint identifies only
the City of Enterprise as a defendant and it appears
that, under Alabama law, a municipality cannot be held
liable for malicious prosecution. Walker v. City of
Huntsville, 62 So.3d 474, 502 (Ala. 2010); see also
Franklin v. City of Huntsville, 670 So.2d 848, 852 (Ala.
1995); Neighbors v. City of Birmingham, 384 So.2d 113,
114 (Ala. 1980). Porter has identified no cases that
undermine what appears to be more than 30 years of clear
precedent and therefore his malicious prosecution claim,

insofar at is relies on state law and is brought solely against a municipality, must be dismissed.

***

For the foregoing reasons, it is ORDERED that:

(1) Defendants City of Enterprise, Javier Ruiz, Jason Anderson, Gerard Dube, Eric Stinson, and James Sanders's motion to dismiss (doc. no. 30) is granted as to counts four and seven of the amended complaint (doc. no. 27) and said counts are dismissed.

(2) Said motion is granted as to counts five and six to extent they are against defendant City of Enterprise and said defendant is dismissed as to said counts.

(3) Said motion is denied in all other respects.

DONE, this the 28th day of March, 2013.

　　　/s/ Myron H. Thompson　　
UNITED STATES DISTRICT JUDGE